IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| RODNEY F. JACKSON, | ‖ | |
| Plaintiff, | ‖ | No. C10-4058-LTS |
| vs. | ‖ | **ORDER ON MOTION FOR SUMMARY JUDGMENT** |
| | ‖ | |
| SCOTT GREEN; KATHLEEN PETRIE; KEITH PETRIE, and KPTOO, INC.; | ‖ | |
| Defendants. | ‖ | |

_____

## I.  PROCEDURAL HISTORY

After several attempts to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), on December 23, 2010, *pro se* plaintiff Rodney Jackson filed an amended complaint (Doc. No. 12) against "McDonalds," Scott Green, Kathleen Petrie, and Keith Petrie.  The amended complaint describes the cause of action as follows:

> STATEMENT OF CLAIM
>
> [O]n or about March, 2008, I Rodney Jackson was on parole to th[e] small, all white, town/community of Sheldon, Iowa, with a population of about 5000 people.
>
> [O]n or abut July or August, 2008, I … became employed at this McDonald of Sheldon, Iowa, and … since my date of hire …, I [was] harassed by two fellow co-workers, Russell and [an]other co-worker who[se name I] do not know, and [both of the] co-workers who did such harassment [were] white.
>
> I … immediately brought [the] matter/complaint to the attention of [the] McDonald store manager, Toni Delf …, and reported [the] matter to … Delf on 2 or 3 occasions to no reply.
>
> I … then decided to contact th[e] McDonald District Manager Scott Green concerning [my] complaint, and … [he] stated to me that he [would] investigate [the] complaint and …

get back with me.  I … also notified [Mr. Green] concerning [my] complaint[s] on 2 or 3 occasions to no reply.

[Due] to my making such complaint, … my hour[s] of work were cut in half, from 32 hours per week to 16 hours per week.  Once again, I … attempted to contact [the] District Manager Scott Green concerning all matter[s] mentioned in this complaint, once again to no reply.  I … left messages for [him] to return my call, [but] never received any.

[O]n or about September 12, 2008, I [broke] my ankle … [during a] robbery [in which] I was the [victim].

I … notified th[e] store manager Toni Delf of [the robbery], and [Delf told] me to save any and all [of] my doctor medical documents together and … when I [was] released to return to work, … to bring [her] copies of such medical record[s].

I … also notified [the] store manager (Toni Delf) of my hospitalization for 2 to 3 days [due] to such ankle injury.  Upon my … being released by the doctor to return to work with some work restrictions, I … notified [the] store manager Toni Delf, … [who] … stated to me … that [I] no longer work[ed] at [the] McDonald of Sheldon.  Toni Delf failed to state any reasons [for] my termination.  Once again I attempted to contact Scott Greene … to no reply.

[This] McDonald only employed two black males at the time frame mentioned above, and the other black male [had] mix[ed] race kids [who] also worked at this McDonalds.

I … believe that because of my race … I was terminated and … because I am an African American who [filed/made] a complaint against two fellow white co-workers at … McDonalds, this termination did occur.

I … do believe that such termination did occur by this store manager Toni Delf as a form of retaliation for my … calling on this Scott Green District Manager.

[O]ne of the harassing co-work[ers] (Russell) was getting about 20 to 80 hours per week after my hours were cut in half.

[I] was replaced by a white person, [who] was paid $1 dollar more [per hour] than [what I was paid].

[On] or about January 30, 2008, this McDonald owner Keith Petrie did file/make bogus false charges against me

> [which] [I] believe [were] illegal actions by this Keith Peterie
> to prevent me from receiving my unemployment benefit[s] ….
> [I] was denied by … Store Manager Toni Delf the
> training to close the store at closing time.

On January 12, 2011, the named defendants appeared and answered (Doc. No. 16) the amended complaint.  On February 18, 2011, Mr. Jackson moved (Doc. No. 19) to amend his complaint to substitute "KPTOO, Inc." for McDonalds as the proper party-defendant.  The court granted the motion on February 22, 2011 (Doc. No. 20).

On December 8, 2011, the defendants filed a motion (Doc. No. 32) for summary judgment, together with a brief (Doc. No. 32-1), a statement of material facts (Doc. No. 32-2), and an appendix (Doc. No. 32-2).  Mr. Jackson responded to the motion on January 6, 2012 (Doc. No. 36) and supplemented his response later that same day (Doc. No. 40).  On February 13, 2012, Mr. Jackson filed additional materials (Doc. No. 48).[1]

On February 24, 2012, the court held initial telephonic arguments on the motion for summary judgment.  Mr. Jackson appeared personally and the defendants appeared by attorney Jeffrey R. Mohrhauser.  As a result of a discussion during that hearing, the court granted Mr. Jackson time to submit an amended resistance to the defendants' motion by no later than April 1, 2012 (Doc. No. 53).  On March 8, 2012, Mr. Jackson filed a response (Doc. No. 56) to the defendants' statement of undisputed facts.  On March 23, 2012, Mr. Jackson filed a brief (Doc. No. 57) in support of his amended resistance to defendants' motion for summary judgment.  Defendants filed a reply (Doc. No. 59) on April 30, 2012.

On June 19, 2012, the court held additional telephonic arguments on the motion for summary judgment.  Mr. Jackson appeared personally and the defendants appeared by attorney Robert N. Stewart.  The matter is now fully submitted.

---

[1]On the same day, Mr. Jackson also filed a motion (Doc. No. 47) to amend his complaint to allege a conspiracy among the defendants to have his parole revoked.  The court denied that motion on February 24, 2012 (Doc. No. 53).

## II.  RELEVANT FACTS

*The parties*.  Mr. Jackson is a 47 year-old African-American male who currently resides in Atlanta, Georgia.  Defendant KPTOO, Inc. ("KPTOO") is an Iowa corporation with its principal place of business in Sioux City, Iowa.   KPTOO operates various McDonalds restaurants in Northwest Iowa, Northeast Nebraska and Southeast South Dakota, including one located in Sheldon, Iowa ("Sheldon McDonalds").  Defendants Keith Petrie ("Keith") and Kathleen Petrie ("Kathy") are the shareholders of KPTOO. Defendant Scott Green ("Green") is the Director of Operations.

*Mr. Jackson's Employment*.  Mr. Jackson became employed at the Sheldon McDonalds on July 14, 2008.  His title was "crew member" and his responsibilities included cooking, assembling sandwiches, stocking freezers, preparing dress tables and cleaning. Mr. Jackson's direct supervisor was Will Collins, an African-American male who was the shift manager. Toni Delfs was the general manager of the restaurant and Green was the operations manager.

Mr. Jackson was an hourly employee.  During the two months he worked at Sheldon McDonalds, he worked between 40 and 60 hours per two-week pay period.  He earned $8.10 per hour.

Mr. Jackson's supervisors cited him for disciplinary reasons on multiple occasions. On August 16, 2008, Manager Jennifer Chancellor cited Mr. Jackson for abusive language/arguing/fighting;  being uncooperative;  and  insubordination.   Apparently Mr. Jackson was yelling at co-workers because they were bumping into each other.  When Chancellor tried to talk with Jackson, he was not receptive.  Chancellor wrote: "I told [Jackson] to settle down and he still continued with his disrespectful behavior.  I told [Jackson] he needs to respect everyone here and he didn't like what I was saying so plans on talking to Toni [Delfs]." On August 21, 2008, Delfs wrote: "Have received numerous complaints about threatening behavior from [Jackson] to other crew members.  This is unacceptable and is a form of harassment. If I get further complaints concerning this issue

will be terminated as all of our employees are entitled to a safe work environment and this is creating a hostile work environment."

*Mr. Jackson's Complaints.*   Mr. Jackson claims he was having conflicts with two Caucasian co-workers, Russell Koerting and Richard Haller.  Around September 11, 2008, he reported these problems to Delfs.  Delfs spoke with both Koerting and Haller about these problems on September 11, 2008.  There is no evidence that the conflicts were of a racial nature or that Mr. Jackson alleged that he was being harassed on the basis of his race.

Mr. Jackson also alleges he complained to Green regarding his hours being cut.  He claims Green promised to investigate this matter and follow up with him, but never did. According to the defendants, Mr. Jackson contacted Green on two occasions.  During the first contact, Mr. Jackson complained about his hours being cut.  Green told Mr. Jackson that he would follow-up by contacting Delfs.  Mr. Jackson later called Green again to complain about his hours.  He alleged that management at the Sheldon McDonalds retaliated against him for his prior call to Green.  Mr. Jackson also informed Green about his run-in with Koerting and Haller.  Green told Mr. Jackson that he would talk with Delfs and call him back. According to the defendants, Green attempted to call Mr. Jackson back on two occasions but was unsuccessful both times.  The first time, Mr. Jackson was so impaired that he did not know who Green was or why Green was calling.  The second time, Green left a voice-mail message for Mr. Jackson but never heard back.

*Mr. Jackson's Injury.*   On September 13, 2008, Jackson contacted a McDonalds store in Sioux City and advised that he was in the hospital with a broken ankle. This information was relayed to Delfs at the Sheldon McDonalds. After his release from the hospital, Mr. Jackson came into the restaurant and spoke with Delfs about returning to work.  At the time he came into the restaurant, he was on crutches and had not been medically cleared to return to work.  Pursuant to store policy, Mr. Jackson was required to have a doctor's note authorizing him to return to work.  Defendants allege Mr. Jackson

was told to return to work on October 14 and that he would need a doctor's note.  Mr. Jackson denies this and contends he was simply told to maintain monthly contact with Delfs and to let her know when he was cleared to return to work.

It is undisputed that Mr. Jackson failed to show up for work on October 14, 2008. In response to his failure to show, Delfs contacted Kathy at KPTOO's corporate office in Sioux City.  Delfs informed her that Jackson was supposed to come in for work that day but did not show or call.  The result of the telephone conversation was that Delfs was to wait and see if Jackson would show up or call the restaurant within the next few days.

*Termination of Employment.*  Mr. Jackson never returned to work.  During October or November 2008, Delfs felt that Mr. Jackson's position needed to be filled.  Since Mr. Jackson had not called in and had not returned, Delfs hired another person to replace Jackson.  In November 2008, Mr. Jackson called the Sheldon McDonalds and asked Delfs about the status of his position. Delfs informed Mr. Jackson that she had terminated his employment because he had not shown up for one month and had not called. She told Mr. Jackson that although his position had been filled, he could reapply. Mr. Jackson became enraged and swore at Delfs.  Delfs told Mr. Jackson that he could discuss this matter with Keith or Kathy.

After her conversation with Mr. Jackson, Delfs called KPTOO's corporate office and spoke with Kathy.  She told Kathy that she had decided to terminate Mr. Jackson's employment and hire another employee because he had abandoned his position. Kathy told Delfs she agreed with this decision.

*Mr. Jackson's Threats.*  On January 27, 2009, Mr. Jackson called KPTOO's corporate office and spoke to Kellie Wagner.  Mr. Jackson was irate during this phone call. He swore at Wagner and referred to Keith as a motherf---er and a son of a b--ch. Jackson told Wagner to "tell Keith and tell Keith's wife that I'll kill the motherf---ers." He also told Wagner that he wanted to "beat that b--ch."  Wagner recorded this telephone call.  She then contacted Keith and informed him of Mr. Jackson's threats.  According to

the defendants, Jackson is no longer eligible for re-hire because of the threats made during this telephone call.[2]

*African-Americans Employed at the Sheldon McDonalds.* Mr. Jackson has alleged that he was one of only two African-Americans employed at the Sheldon McDonalds. However, the defendants have produced evidence showing that as of September 13, 2008, which was the last day Mr. Jackson worked at the store, five of the fourteen employees in Jackson's department were African-American males.

### III. LEGAL ANALYSIS

#### A.  Summary Judgment Standards

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.  Fed R. Civ. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed R. Civ. P. 56(c)).

A material fact is one that "'might affect the outcome of the suit under the governing law.'"  *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248.  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith*

---

[2]Mr. Jackson's response to defendants' statement of undisputed facts contains a general denial of the allegations concerning this telephone call.  Doc. No. 56 at 4.  However, he has cited to nothing in the record supporting his denial.  The defendants submitted a recording of the call and caller ID evidence indicating that the call originated from Mr. Jackson's then-residence in Sheldon, Iowa.

*Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, at 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id*. at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*.

The party moving for entry of summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005); Fed.R.Civ.P. 56(e). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, the court must give the nonmoving party the benefit of all reasonable

inferences that can be drawn from the facts.  *Id.*  However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).  Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

While it has sometimes been suggested that summary judgment should be granted sparingly in employment discrimination cases,[3] the Eighth Circuit has made it clear that such cases are not subject to unique summary judgment standards:

> The panel statements asserting a different standard of review for summary judgment in employment discrimination cases are contrary to Supreme Court precedent. The Court has reiterated that district courts should not "treat discrimination differently from other ultimate questions of fact." *Reeves* [*v. Sanderson Plumbing Prods., Inc.*], 530 U.S. [133] at 148, 120 S.Ct. 2097 [(2000)], *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), *quoting USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In a landmark case, the Court wrote:
>
> > Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."
>
> *Celotex Corp.* [*v. Catrett*], 477 U.S. [317] at 327, 106 S.Ct. 2548 [(1986)] (quoting Fed.R.Civ.P. 1). Because summary judgment is not disfavored and is designed for "every action," panel statements to the contrary are unauthorized and should not be followed. There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Fercello v. County of Ramsey*, 612 F.3d 1069,

---

[3] See, e.g., *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *Woods v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004) ("[S]ummary judgment should be used sparingly in employment discrimination cases...."); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("[S]ummary judgment should seldom be used in employment discrimination cases.").

1077 (8th Cir.2010), *citing Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir.2006), and *quoting Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir.1999).

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

## B.  Employment Discrimination

Mr. Jackson claims the defendants violated the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. *et seq.*, by terminating his employment with KTPOO because of his race.  The defendants deny this allegation.

A plaintiff can prove a Title VII claim by either direct evidence or by the indirect method of proof set out under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Mr. Jackson has submitted no direct evidence of race discrimination.  In the absence of direct evidence, Mr. Jackson's claim is subject to the *McDonnell Douglas* burden-shifting analysis.  *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006).  The first step of that analysis requires the plaintiff to establish the following elements of a *prima facie* case: (1) that the plaintiff was a member of a protected class; (2) that he was meeting the employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently.  *Twymon*, 462 F.3d at 934; *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 913 (8th Cir. 2006); *Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006).  "If a *prima facie* case is established, a 'burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for firing the plaintiff.'"  *Twymon*, 462 F.3d at 934-35 (quoting *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005)).

If the employer articulates such a reason, the burden returns to the plaintiff to present evidence that the reason offered by the employer is actually a pretext for discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993); *McDonnell*

10

*Douglas*, 411 U.S. at 804.   To prove pretext, a plaintiff must both (a) discredit the employer's asserted reason for termination and (b) show the circumstances permit drawing the reasonable inference that the real reason for terminating the plaintiff was his race. *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).   The proffered non-discriminatory reason for termination need not be factually correct so long as the employer honestly believed the asserted grounds at the time of the termination. *Id.* at 762.

*The Prima Facie Case.*   The evidence permits a finding for Mr. Jackson on the first three elements of his prima facie case.   However, he has failed to show similarly-situated employees outside the protected class were treated differently.   He could have established the fourth element with evidence of KPTOO employees outside the protected class who engaged in similar conduct but were disciplined less harshly.   *Chappell v. The Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012).   No such evidence is in the record.   More specifically, there is no evidence of any other employee who failed to appear for work for an extended period of time, failed to provide documentation concerning the need for medical leave, but remained employed by KPTOO.   In short, Mr. Jackson's claim of unlawful discrimination fails as a matter of law because he has failed to produce evidence sufficient to establish a *prima facie* case.

*Pretext.*   Even if Mr. Jackson established a *prima facie* case, his discrimination claim would fail as a matter of law due to the lack of evidence of pretext.   As noted above, if he would have established a *prima facie* case, then the defendants would have the burden of articulating a legitimate, non-discriminatory reason for his discharge.   The defendants have done so by submitting evidence that Mr. Jackson's employment was terminated because he failed to call or appear for work for an extended period of time.   This shifts the burden to Mr. Jackson to (a) discredit the asserted reason and (b) show that the circumstances permit drawing the reasonable inference that Mr. Jackson's race was the real reason.   He has not done so.

Mr. Jackson contends it was his understanding that he was to check in with KPTOO each month and let the company know when he was cleared to return to work. Even accepting this to be true, however, would not end the analysis. In other words, Mr. Jackson must do more than simply dispute the facts surrounding his discharge. He must point the court to evidence that would allow the jury to find he was discharged because of his race. Not only does the record lack any such evidence, but the relevant evidence actually supports the opposite inference. First, defendants have produced evidence that as of September 2008, five of the fourteen employees in Mr. Jackson's department were African-American males. Mr. Jackson has produced no evidence suggesting that the defendants engaged, or ever were accused of engaging, in discriminatory conduct toward other African-American employees.

Moreover, defendants have produced evidence that Toni Delfs was the store manager during Mr. Jackson's employment at the Sheldon McDonalds, that her duties included hiring, handling disciplinary issues and terminating employees, and that she was the person who made the decision to terminate Mr. Jackson's employment. Mr. Jackson was employed for only three months, from July 14, 2008, to October 14, 2008. As the Eighth Circuit has held, "[t]here is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time." *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-63 (8th Cir. 1997); *see also Arraleh v. County of Ramsey,* 461 F.3d 967, 976 (8th Cir. 2006); *Lowe v. J.B. Hunt Transp.*, 963 F.2d 173, 174-75 (8th Cir. 1992). The rationale for this inference is that it is "simply incredible" to believe that the same person who made the decision to hire a member of a protected class would suddenly develop a discriminatory aversion to members of that class. *See, e.g., Lowe,* 963 F.2d at 174-75 (addressing alleged age discrimination).

In short, not only has Mr. Jackson failed to produce evidence supporting a finding that he was discharged because of race, the relevant evidence in the record points the other

direction.  As a matter of law, Mr. Jackson has failed to establish a *prima facie* case and has failed to rebut the defendants' articulated, non-discriminatory reason for discharge. The court will grant the defendants' motion for summary judgment on Mr. Jackson's claim of employment discrimination under Title VII.

## C.  Unlawful Retaliation

Mr. Jackson claims he was discharged in retaliation for complaining about other employees.  As with his discrimination claim, Mr. Jackson has presented no direct evidence of a retaliatory motive.  As such, the *McDonnell Douglas* burden-shifting analysis applies. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936 (8th Cir. 2006). First, the plaintiff must put forth a *prima facie* case of retaliation. *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1078 (8th Cir. 2005). To establish a *prima facie* case of retaliatory discrimination, a plaintiff must show: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action. *Twymon*, 462 F.3d at 936 (citing *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713-14 (8th Cir. 2000)).  If the plaintiff puts forth a *prima facie* case, the employer may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action. *Eliserio*, 398 F.3d at 1078.  If the employer proffers a race-neutral rationale, the plaintiff may attempt to refute the asserted reason as mere pretext. *Id*.

*The Prima Facie Case*.  Mr. Jackson cannot establish a *prima facie* case because he has failed to provide the court with evidence that he engaged in activity protected by Title VII.  Protected activity is "an informal or formal complaint about, or other opposition to, an employer's practice or act … if the employee reasonably believes such an act to be in violation of the statute in question." *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000).  Opposition to a Title VII violation need not rise to the level of a formal complaint

to receive statutory protection. *See, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2nd Cir. 2000).  An employee may oppose discrimination by filing formal charges or by informal action such as "making complaints to management, writing critical letters to customers protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Id.* (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). However, to have engaged in protected activity, Mr. Jackson must have protested what he perceived as discriminatory acts by the defendants. *Sherman,* 253 F.3d at 410.  In other words, not every complaint about workplace conditions or events qualifies as activity protected by Title VII.  Instead, Mr. Jackson's complaints must have involved allegations of conduct that violated Title VII.

Here, even after reviewing the record in a light most favorable to Mr. Jackson, the court is unable to conclude that he engaged in protected activity.  He does allege he was "harassed by" and had "problems" with two Caucasian co-workers, but he has not alleged that those problems were based on or related to his race.  He does not, for example, claim that the co-workers directed racial slurs toward him or otherwise created a harassing or hostile atmosphere *because of his race*.  Nor has he disclosed the substance of his complaint to the defendants about the situation.  For example, he has not alleged he told the defendants that he was being harassed because of his race.  According to the defendants, he simply reported that he was "not getting along" with two co-workers and that the defendants talked to everyone involved to resolve the situation.  At most, the evidence Mr. Jackson has submitted demonstrates he had unspecified conflicts with two co-workers and he complained to the defendants about those conflicts.  Because there is no evidence his complaint involved perceived harassment or discrimination based on race, the complaint does not rise to the level of protected activity under Title VII.

Mr. Jackson also alleges he complained to the defendants about his hours being cut. Again, however, he has never alleged, let alone produced evidence, indicating that his complaints about his hours were complaints of unlawful discrimination *based on race*.  He

14

does not claim, for example, that he accused the defendants of reducing his hours because he is African-American. At most, Mr. Jackson has shown he was unhappy about the amount of hours he was receiving and he expressed this unhappiness to the defendants. Because there is no evidence his complaint involved perceived harassment or discrimination based on race, the complaint does not constitute protected activity.

Mr. Jackson has also failed to establish the third element of his *prima facie* case, a causal connection between protected activity and the adverse employment action. In other words, even if his complaints rose to the level of protected activity, he would still have the burden of producing evidence of some connection between those complaints and the defendants' decision to terminate his employment. The record simply contains no such evidence. At most, Mr. Jackson has shown (a) he made complaints while employed by KPTOO and (b) his employment was subsequently terminated. The Eighth Circuit has held that "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). In other words, the mere fact a decision was made at some point after an event occurred is not, by itself, evidence that the decision was motivated by the event.

Mr. Jackson has failed to produce evidence sufficient to establish a *prima facie* case of retaliation. Specifically, he has failed to show that he engaged in protected activity and has failed to show a causal connection between his complaints and his discharge.

*Pretext*. Even if Mr. Jackson satisfied the elements of a *prima facie* case, he would have to rebut the defendants' non-discriminatory explanation for his discharge. *See, e.g., Eliserio*, 398 F.3d at 1078. For the same reasons discussed, *supra*, with regard to his claim of unlawful discrimination, he has failed to produce evidence raising a genuine issue of material fact on this issue. There is simply no evidence in the record that could allow reasonable jurors to find the defendants' proffered explanation false and that their decision to terminate Mr. Jackson's employment arose from retaliatory motives.

Due to Mr. Jackson's failure to establish a *prima facie* case and the lack of evidence rebutting the defendants' non-discriminatory explanation, the court finds the defendants are entitled to summary judgment on his claim for retaliatory discharge in violation of Title VII.

### D.  Liability of Individual Defendants

During the June 19, 2012, hearing on defendants' motion for summary judgment, counsel for the defendants raised an additional issue as to the liability of the individual defendants.  Specifically, counsel argued that KPTOO, as Mr. Jackson's former employer, is the only defendant subject to potential liability under Title VII.  Counsel requested that the court grant summary judgment in favor of the three individual defendants even if there are genuine issues of material fact precluding entry of summary judgment against KPTOO. Mr. Jackson orally resisted this request during the hearing.

Because the court has determined that all of the defendants are entitled to summary judgment, the issue of the individual defendants' potential liability is moot.  As such, the court will not separately analyze the arguments relating to that issue.

### IV. ORDER

Based on the foregoing, **IT IS THEREFORE ORDERED AS FOLLOWS:**

1.     Defendants' Motion for Summary Judgment (Doc. No. 32) is hereby **GRANTED**.

2.     The Amended Complaint (Doc. No. 12) filed by plaintiff Rodney F. Jackson on December 23, 2010, is hereby **DISMISSED**.

3.     The trial scheduled on September 24, 2012, and the final pretrial conference set for September 12, 2012, are hereby **CANCELLED**.

16

4.      Any and all other pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**
**DATED** this 26th day of June, 2012.

_____
LEONARD T. STRAND
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT